UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN REDDICK,

    Plaintiff,

v.   Case No: 8:15-cv-1946-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## ORDER

Plaintiff, Stephen Reddick, seeks judicial review of the denial of his claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision is based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

**A.**    **Procedural Background**

Plaintiff was born on June 26, 1993, and, in February of 1999, it was determined that Plaintiff was disabled as of October 1998 due to Attention Deficit Hyperactivity Disorder ("ADHD"). (Tr. 72–73.) Therefore, as a child, Plaintiff received supplemental security income benefits based on his disability. (Tr. 25.) When Plaintiff reached age eighteen, as required by law (*see* 20 C.F.R. § 416.987(a)–(b)), his eligibility for benefits was re-determined under the rules for determining disability in adults. (Tr. 25) In August of 2011, Plaintiff's disability was determined to have ended and he was notified that his benefits would cease in October of 2011. (Tr. 74–96.)

The Disability Hearing Officer upheld this determination. (Tr. 25, 106–130.) Plaintiff then requested an administrative hearing. (Tr. 131.) Upon Plaintiff's request, the ALJ held a hearing on May 21, 2013, at which Plaintiff and his mother, Nichelle Rolfe, appeared and testified. (Tr.

25, 40–71.) Following the hearing, on July 25, 2013, the ALJ issued an unfavorable decision finding that Plaintiff's disability ended in August of 2011 and that he has not become disabled again since that date. (Tr. 25, 34.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 19–21.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

At the time of his hearing before the ALJ, Plaintiff was nineteen years old and lived with his mother and his step-father. (Tr. 45, 48.) Plaintiff has a tenth grade education and no past relevant work experience. (Tr. 31, 33, 45–46.) Plaintiff alleged eligibility for supplemental social security income based on his alleged disability due to intellectual disability, ADHD, intermittent explosive disorder, antisocial personality disorder, major depressive disorder, and learning disorders. (Tr. 43; Dkt. 20 at 3.)

In rendering the decision, the ALJ concluded that, since August of 2011, Plaintiff had the following severe impairments: borderline intellectual functioning, ADHD, and a learning disorder. (Tr. 27 at ¶ 2.) The ALJ considered Plaintiff's diagnoses of intermittent explosive disorder, antisocial personality disorder, and major depressive disorder, but determined that these impairments are not severe. (*Id.*) In so finding, the ALJ reviewed May 2012 treatment notes from Plaintiff's treating physician, psychiatrist Dr. Andres Martin. (Tr. 27 at ¶ 2, 468.) Dr. Martin noted that Plaintiff was doing "extremely well," had a normal mental status, was taking the prescription medication Prozac, and was intelligent, respectful, and behaving appropriately, including answering questions in a "polite and respectful manner" with "good eye contact." (*Id.*) The ALJ observed that Plaintiff had mood issues when he did not take his medication. (Tr. 27 at

¶ 2.) Finally, the ALJ considered Plaintiff's testimony at the hearing that he had a "back problem," which made it difficult for him to lift more than ten or fifteen pounds (Tr. 53), but determined that Plaintiff had no medically-determinable back impairment because there was no record evidence of such diagnosis or treatment for such symptoms and Plaintiff testified that he played basketball. (Tr. 28, 53.)

Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 28 at ¶ 3.) Specifically, the ALJ considered whether Plaintiff's mental impairments met Listing 12.02 or 12.05. (*Id.*)

First, as to Listing 12.02, the ALJ considered whether Plaintiff's mental impairments met Listing 12.02, which describes physiological and behavioral abnormalities associated with brain dysfunction. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. Listing 12.02 is satisfied when a claimant's impairments meet subparts A and B or subpart C. *Id.* The ALJ considered whether Plaintiff's impairment met Listing 12.02C, which requires (1) a "[m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and (2) one of the following: (a) "[r]epeated episodes of decompensation, each of extended duration," (b) "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (c) "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." *Id.* at § 12.02C.  The ALJ

determined that there was no evidence that Plaintiff had a medically-documented history of a chronic, organic mental disorder lasting at least two years causing more than a minimal limitation to Plaintiff's ability to do basic work activities. (Tr. 29 at ¶ 3.)

Second, the ALJ considered whether Plaintiff's impairments met Listing 12.05, which describes intellectual disability, meaning "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 is satisfied when a claimant shows (1) subaverage intellectual function with adaptive functioning deficits and the criteria set forth in subparts A, B, C, or D. *Id.* First, the ALJ reviewed Plaintiff's school records and determined that although Plaintiff has "some difficulties in behavior and learning," Plaintiff "demonstrates good adaptive functioning skills" based on his teacher's notes regarding his behavior, Plaintiff's 2.1 grade point average, and Plaintiff's aspirations to earn his high school diploma, attend "tech" school, and then enter the workforce. (Tr. 32 at ¶ 4.)

To meet subpart A of Listing 12.05, the claimant must show evidence of "dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded." *Id.* at § 12.05A. The ALJ found that Plaintiff did not meet Listing 12.05A because he is able to independently care for his personal needs, albeit with reminders. (Tr. 30 at ¶ 3.)

Next, the ALJ found that Plaintiff did not meet Listing 12.05B because he does not have "[a] valid verbal, performance, or full scale IQ of 59 or less." (*Id.*) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B). Specifically, the ALJ reviewed record evidence concerning Plaintiff's intelligence quotient ("IQ") testing. (Tr. 31–32.) In January of 1999, the ALJ noted, Plaintiff

achieved a performance score of 72, but his IQ test was not completed due to his poor behavior. (Tr. 31 at ¶ 4, 324.) However, in August of 1999, Plaintiff achieved a full scale IQ score of 80, with a verbal IQ score of 80 and a performance IQ score of 85, on the Wechsler Preschool and Primary Scale of Intelligence-Revised. (Tr. 31 at ¶ 4, 369.) Then, in August of 2011, Dr. Fred Alberts, Jr., at the request of the Office of Disability Determination, performed a psychological examination of Plaintiff and administered IQ tests to Plaintiff using the Wechsler Adult Intelligence Scale, Fourth Edition. (Tr. 406–411.) Plaintiff achieved an IQ score of 70 with the following composite scores: 78 for verbal comprehension, 75 for perceptual reasoning, 69 for working memory, and 74 for processing speed. (Tr. 409.) Dr. Alberts diagnosed Plaintiff with ADHD and borderline intellectual functioning and stated that Plaintiff has "a global assessment functioning" ("GAF") score of 75. (Tr. 410.)

The ALJ noted that a GAF score of between 71 and 80 "indicates no more than slight impairment in social, occupation, or school functioning, and any symptoms are transient and expectable reactions to psychological stresses."[1] (Tr. 31 at ¶ 4.) The ALJ noted the discrepancy between Plaintiff's 1999 IQ score of 80 and his 2011 score of 70 and accorded Dr. Alberts's assessment only "some weight" because Dr. Alberts's report failed to provide a rationale for the discrepancy in the scores and was internally inconsistent. (Tr. 32 at ¶ 4, 408.)

---

[1] "The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults." *McCloud v. Barnhart*, 166 F. App'x 410, 413 (11th Cir. 2006) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed.2000)). As explained by the Eleventh Circuit:

> A GAF of 31–40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, familiar relations, judgment, thinking, or mood. A score between 41 and 50 indicates serious symptoms, such as suicidal ideation, serious impairment in social, occupational or school functioning. A score between 51 and 60 indicates moderate symptoms, such as occasional panic attacks or moderate difficulty in social, occupational or school functioning.

*Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 523 (11th Cir. 2015).

The ALJ further found that Plaintiff did not meet Listing 12.05C because Plaintiff does not have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 30 at ¶ 3) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C).

Finally, the ALJ analyzed whether Plaintiff's impairments met Listing 12.05D, which requires (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) at least two of the following: (a) "[m]arked restriction of activities of daily living"; (b) "[m]arked difficulties in maintaining social functioning"; (c) "[m]arked difficulties in maintaining concentration, persistence, or pace"; or (d) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05D.  The ALJ stated that, in Listing 12.05D, "marked" means "more than moderate but less than extreme" and that "repeated episodes" of decompensation means three episodes within one year, each lasting at least two weeks. (Tr. 28 at ¶ 3.) (*see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.)

As far as daily living, the ALJ found that Plaintiff has mild restrictions because he can attend to his personal care, although he needs reminders. (Tr. 28 at ¶ 3, 205–220.) There were no reports by examining physicians regarding Plaintiff's lack of hygiene or abnormal appearance. (Tr. 28 at ¶ 3, 408, 431, 452.) Finally, Plaintiff is able to play sports, watch television, and use his computer and phone. (Tr. 28 at ¶ 3, 52–53, 56.) Considering the foregoing, the ALJ determined that Plaintiff has some limitations in his daily living, but they are "no more than mild." (Tr. 28 at ¶ 3.) Next, the ALJ found that Plaintiff has no more than "moderate difficulties" with social functioning because although he has trouble getting along with others, including authority figures, a teacher described him as nice and polite and he is able to socialize with friends by playing basketball and going to the movies. (Tr. 28 at ¶ 3, 47–48, 54–55, 217, 286.) As to whether Plaintiff

has marked difficulties with maintaining concentration, persistence, or pace, the ALJ found that although Plaintiff's testimony regarding his difficulty with concentration is consistent with his mental impairments, Plaintiff testified that he can attend to simple household chores, play basketball, and is learning to "work on computers." (Tr. 48, 53, 460.)  Thus, any difficulties in maintaining concentration, persistence, or pace are moderate.  (Tr. 29 at ¶ 3.)  Finally, the ALJ concluded that there was no record evidence that Plaintiff has experienced any episodes of decompensation of extended duration.  (*Id.*)

In sum, the ALJ found that Plaintiff did not meet Listing 12.05D and, in so concluding, afforded "great weight" to the 2011 assessments performed by Florida Department of Health psychological consultants Dr. Mike Dow and Dr. Keith Bauer, finding moderate limitations in Plaintiff's daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation of extended duration.  (Tr. 29 at ¶ 3, 422, 448.)

The ALJ then concluded that, since August of 2011, Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: Plaintiff remains able to understand, remember, and carry out simple step-by-step instructions, interact appropriately with supervisors and occasionally with co-workers and the general public, maintain attention and concentration for two hours at a time, and adapt to routine changes in the workplace.  (Tr. 30 at ¶ 4.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 32 at ¶ 4.)  Specifically, the ALJ considered Plaintiff's testimony about his past trouble at school, difficulties with teachers, ability to do household chores,

albeit with reminders from his mother, and frequent confusion and difficulty focusing. (Tr. 31 at ¶ 4.)

In assessing Plaintiff's RFC, the ALJ afforded "great weight" to consulting physicians Dr. Dow's and Dr. Bauer's assessments that Plaintiff can understand, remember, and carry out simple instructions and adapt to changes and demands. (Tr. 32 at ¶ 4.) The ALJ found his assessment of Plaintiff's RFC supported by the observations of Dr. Martin, Plaintiff's treating psychiatrist, that Plaintiff was intelligent, respectful, and polite, exhibited appropriate behavior, and maintained eye contact. (Tr. 32 at ¶ 4, 468.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work experience. (Tr. 33.) Given Plaintiff's age (nineteen years old), tenth-grade education, lack of past work experience, and non-exertional limitations, the vocational expert ("VE") testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, including jobs as a sweeper/cleaner, floor waxer, and laundry laborer. (Tr. 33 at ¶¶ 5–9, 57–60.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff's disability to have ended in August of 2011 and that Plaintiff has not become disabled since that date. (Tr. 33–34 at ¶¶ 9–10.)

**APPLICABLE STANDARDS**

When a child who was found disabled and eligible for benefits reaches age eighteen, the child's eligibility for supplemental security income must be re-determined using the rules applied to adults filing new applications. 20 C.F.R. § 416.987(a)–(b). To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of

not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of the Listings; and, (4) if applicable, whether the claimant can perform his or her past relevant work considering the ALJ's assessment of the claimant's RFC. If the claimant cannot perform the tasks required of his or her prior work or if the claimant has no past relevant work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 416.920(a), (g). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following ground: the ALJ erred in his assessment that Plaintiff's impairments did not meet Listing 12.05C.  Specifically, Plaintiff contends that he meets Listing 12.05C because he has a valid verbal IQ score of 70 and additional mental limitations that limit his interaction with coworkers and the general public. (Dkt. 20 at 7.) For the reasons that follow, this contention does not warrant reversal.

The claimant has the burden of proving the existence of a listing-level impairment.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  To meet Listing 12.05, a claimant's impairment must first satisfy "the diagnostic description in the introductory paragraph," to Listing 12.00, which requires that a claimant demonstrate significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested before age twenty-two. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A; *see also* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (text rev., 4th ed. 2000) (stating that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting"). In addition to meeting the diagnostic threshold, a claimant must meet the severity requirements in Section A, B, C, or D of Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Relevant to this appeal, Listing 12.05C requires the claimant to show the following: (1) evidence of a valid IQ score of 60 through 70 and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910-11 (11th Cir. 2015). Therefore, Listing 12.05C requires that a "claimant meet[] the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning." *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014). To show that an impairment matches a listing, a claimant "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

The ALJ is not required to rely on the results of an IQ test alone in determining intellectual disability. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00D6a (stating IQ test results "provide data that help verify the presence of intellectual disability," but are "only part of the overall assessment"). Rather, the ALJ is "required to examine

the [IQ test] results in conjunction with other medical evidence and the claimant's daily activities and behavior" to "assure consistency with daily activities and behavior." *Id.* at 1499–1500 (finding the ALJ's determination that the claimant was not mentally impaired supported by substantial evidence because, in addition to other record evidence, the claimant "was close to completing the requirements for a bachelor of science degree and had a history of having taught high school algebra"). Thus, the ALJ's discrediting of an IQ score will be upheld if there is substantial record evidence supporting the finding. *Id.* at 1500.

Plaintiff contends that the ALJ erred by discrediting Plaintiff's 2011 IQ because the ALJ gave Dr. Alberts's 2011 evaluation, which contains Plaintiff's 2011 IQ score of 70, only "some weight." (Dkt. 20 at 6–7.) Plaintiff argues that the ALJ instead considered Plaintiff's 1999 IQ score of 80, which he contends was erroneous because it is too far removed in time to be considered valid. (Dkt. 20 at 7) (citing the Childhood Disability Listing, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 112.00C10). Plaintiff contends that, based on the 2011 IQ test result, he meets the first prong of Listing 12.05C and, as to the second prong, there is evidence that Plaintiff's additional mental limitations affect his ability to interact with potential coworkers and the general public. (Dkt. 20 at 6–7.)

Here, the ALJ concluded that Plaintiff's 2011 IQ scores was inconsistent with other record evidence. First, the ALJ accorded Dr. Alberts's report less weight because the report was internally inconsistent—Dr. Alberts found that Plaintiff was "generally cooperative," but yet also noted that Plaintiff complained throughout the testing. *See Mata ex rel. J.G. v. Astrue*, No. 8:11-CV-1910-T-TGW, 2012 WL 6109891, at *4 (M.D. Fla. Dec. 10, 2012) ("While Dr. Alberts did not state that the IQ scores were invalid, his report, coupled with the other evidence in the record, clearly permitted the law judge to conclude that the scores were not valid" because the report "set forth

circumstances of the child's lack of effort, cooperation, concentration, and attention that could result in invalid scores."). Further, the ALJ noted that Dr. Alberts failed to explain the discrepancy between the results from his testing of Plaintiff and Plaintiff's previous IQ scores. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00D6 (stating "the narrative report that accompanies the [IQ] test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."); *Frame*, 596 F. App'x at 912-13 ("Because a comment about the IQ test's validity is not required, it is unlikely that the ALJ could reject [claimant's] verbal IQ score on this basis alone. But this does not mean that the report's lack of comment could not factor into his analysis.").

At issue is whether substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet the severity of Listing 12.05C. *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015). Because the ALJ discredited Plaintiff's 2011 IQ score, the Court must determine whether this decision is supported by evidence that this score is inconsistent with other medical evidence and Plaintiff's daily activities. *Popp,* 779 F.2d at 1500. Upon review, and as explained below, the ALJ's findings are supported by substantial evidence and are therefore affirmed.

Addressing Plaintiff's contention that the ALJ was incorrect to afford Plaintiff's 1999 IQ test greater weight than his 2011 score, the Eleventh Circuit, in *Outlaw v. Barnhart*, reviewed a decision in which, similarly, an ALJ relied on scores from a claimant's developmental period although later testing yielded lower scores. 197 F. App'x 825 (11th Cir. 2006). Specifically, in *Outlaw*, the claimant's IQ scores from his development period showed that his IQ score was above 70 even though "IQ tests that [claimant] took as an adult resulted in scores that were slightly lower than the scores he received during his developmental period." *Id.* at 827. The Eleventh Circuit

affirmed the ALJ's conclusion that the claimant did not meet Listing 12.05C because the claimant's IQ score was inconsistent with the claimant's daily activities, as evidenced by the claimant's testimony about working in various occupations. *Id.* at 827, n.1.

Here, as in *Outlaw*, the ALJ's conclusion that Plaintiff's 2011 IQ score was inconsistent with Plaintiff's daily activities and medical evidence is supported by substantial evidence. Specifically, the ALJ considered Plaintiff's 2011 IQ tests contained in the Dr. Alberts's evaluation (Tr. 406–410) in conjunction with (1) Plaintiff's testimony, (2) Dr. Alberts's report, (3) the reports of consulting examining psychiatrists, and (4) a May 2012 report of Plaintiff's treating psychiatrist. (Tr. 31–32 at ¶ 4.)

At the hearing, Plaintiff testified that he completed tenth grade and is currently in school to receive his high school diploma. (Tr. 45.) He described that he has previously been in trouble in school for getting into fights and being "mouthy" to teachers. (Tr. 47–48.) As far as household chores, Plaintiff testified that he cleans the bathroom, sweeps the floor, and cleans his room, although he needs reminders from his mother to complete these chores. (Tr. 48–49.) Likewise, he tends to his personal care, although he needs reminders. (Tr. 49.) He testified that he has difficulty reading, focusing, and controlling his anger. (Tr. 50, 54.) He plays basketball for recreation, but does not shop by himself or have a driver's license. (Tr. 55–56.)

As far as the examination that accompanied Plaintiff's 2011 IQ testing, Dr. Alberts described Plaintiff, at the time of the evaluation, as "casually dressed and adequately groomed," with normal gait and posture, no unusual motor behaviors, generally cooperative, although he complained throughout the evaluation, clear, understandable, logical, coherent, and appeared to have no unusual perceptual experiences. (Tr. 31, 408–409.) Plaintiff reported that he has many friends and likes to sing and play basketball. (Tr. 31, 407.) Dr. Alberts noted that, although he

does not do chores or shop, Plaintiff is able to manage his own funds. (Tr. 408.) As Dr. Alberts reported, Plaintiff achieved an IQ score of 70 with the following composite scores: 78 for verbal comprehension, 75 for perceptual reasoning, 69 for working memory, and 74 for processing speed. (Tr. 409.) Dr. Alberts explained that Plaintiff's general cognitive ability, verbal reasoning ability, nonverbal reasoning ability, and processing speed is within the "borderline" range of intellectual functioning.[2] (Tr. 408–409.)

Next, the ALJ found the findings of Dr. Steven Wu, a consulting psychologist, in his November 2011 examination of Plaintiff, showed that Plaintiff's mental status findings were "largely normal." (Dkt. 31.) Dr. Wu observed that Plaintiff was cleanly dressed and groomed, cooperative, and behaved appropriately. (Tr. 431.) Plaintiff had good eye contact, was understandable, clear, coherent, organized, and "goal-oriented." (*Id.*) Dr. Wu determined that Plaintiff had ADHD and dyslexia. (Tr. 432.) Similarly, Dr. Dow and Dr. Bauer, psychological consultants, found only moderate limitations in Plaintiff's daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation of extended duration. (Tr. 29 at ¶ 3, 422, 448.)

Finally, the ALJ reviewed the May 2012 evaluation by Dr. Martin, Plaintiff's treating psychiatrist, in which Dr. Martin found that Plaintiff is "doing extremely well," is taking his medication, is "intelligent, respectful, appropriate," and maintains good eye contact. (Tr. 32, 468.)

Therefore, the ALJ considered the medical evidence and evidence of Plaintiff's daily activities, as provided through Plaintiff's testimony, to determine that his 2011 IQ test result was

---

[2] It should be noted that Dr. Alberts's findings as to Plaintiff's "borderline" intellectual functioning further support the ALJ's determination that Plaintiff did not meet Listing 12.05C because a diagnosis of " borderline intellectual functioning . . . is mutually exclusive of mental retardation [intellectual impairment]. *Jordan v. Comm'r of Soc. Sec. Admin.*, 470 F. App'x 766, 768 (11th Cir. 2012); *Smith v. Comm'r of Soc. Sec.*, 535 F. App'x 894, 897-98 (11th Cir. 2013) ("[E]ven though she was diagnosed with possible borderline intellectual functioning, this diagnosis alone was insufficient to meet the criteria of Listing 12.05(C)).

inconsistent with the record. This is supported by substantial evidence because, as the ALJ explained, the record shows that Plaintiff is able to participate in household chores and recreational activities, Plaintiff's treating physician found his progress and treatment with medication to be positive, and consulting physicians noted that Plaintiff was able to behave appropriately. *Smith*, 535 F. App'x at 897-98 ("Ultimately, because the record evidence showed that the results of [claimant's] IQ test provided only a low estimate of her IQ and no other medical source determined that [claimant] was mentally retarded, substantial evidence supports the ALJ's finding that [claimant] did not meet or equal the criteria of Listing 12.05(C).").

Finally, it must also be noted that, despite Plaintiff's contentions, the ALJ found that Listing 12.05C was not met also because Plaintiff's school records demonstrates that he has "good adaptive functioning skills." (Tr. 32.) As stated above, to meet Listing 12.05C, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that initially manifest before claimant reaches twenty-two years old. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A. The ALJ noted that Plaintiff achieved a 2.1 grade point average and that his teacher stated that he was "a nice and polite young man" and, although he must be directed to stay focused at times, when focused, he is productive and capable of completing assignments. (Tr. 32, 286–287, 294.) Further, his records show that he "require[d] no assistance with communication and demonstrates age appropriate skills" and exercised independence and self-help skills. (Tr. 287.) Finally, his records state that he has the goal of joining the Job Corps after graduation and would then like to enroll in a technical school or find a job. (Tr. 288.)

Overall, the ALJ found that although Plaintiff has "some difficulties in behavior and learning," Plaintiff "has expressed reasonable goals in spite of his impairments, which indicates that he does not believe he is completed limited in his ability to work." (Tr. 32 at ¶ 4.) The ALJ's

conclusion that Plaintiff could not meet Listing 12.05C because he does not have adaptive functioning deficits is supported by substantial evidence because, as set forth by the ALJ, Plaintiff's school records show that, although he has difficulties with learning and behavior, Plaintiff is able to interact appropriately with others and exercise independence. *O'Neal*, 614 F. App'x at 459-60 (affirming the ALJ's conclusion that, despite claimant's low IQ score, claimant does not have adaptive functioning deficits meeting Listing 12.05C because he has held several jobs without special accommodations and is able to attend to personal chores and care without assistance). Thus, the ALJ's finding that Plaintiff did not meet his burden of showing adaptive functioning deficits is also supported by substantial evidence. Consequently, despite Plaintiff's contentions, the ALJ's conclusion that Plaintiff did not meet Listing 12.05C, both because he did not meet the IQ threshold and because he did not show the requisite adaptive functioning deficits, is supported by substantial evidence and is therefore affirmed.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on July 7, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record